**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT A. KAMPAS, | ) | |
| | ) | |
| and | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| STEVEN S. HOFFMANN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, | ) | *Counts: I, II, III, and IV* |
| | ) | |
| and | ) | |
| | ) | |
| P.O. KENNETH KEGEL, | ) | *Counts: I, II, and III* |
| in his individual and official capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| P.O. ERIC LARSON, | ) | *Counts: I, II, and III* |
| in his individual and official capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| P.O. BRYAN LEBRADFORD LEMONS | ) | *Counts: I, II, and III* |
| in his individual and official capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| P.O. JOHN DOE #1, | ) | *Counts: I, II, and III* |
| in his individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Scott A. Kampas and Steven S. Hoffmann, and for and in

support of their Complaint against Defendants City of St. Louis, Missouri, P.O. Kenneth Kegel,

P.O. Eric Larson, P.O. Bryan LeBradford Lemons, and Police Officer John Doe #1, state as follows:

## INTRODUCTION

Plaintiffs bring this civil-rights action against the City of St. Louis, Missouri, P.O. Kenneth Kegel, P.O. Eric Larson, P.O. Bryan LeBradford Lemons, and Police Officer John Doe #1 for violating their First Amendment right of freedom of speech; retaliating against them for engaging in First Amendment-protected activity; for interfering with their right to observe and record police officers in public places; for unreasonably seizing and arresting them without probable cause; all while Plaintiffs were documenting the public protests following the not guilty verdict in the 1st Degree murder trial of Jason Stockley (the "*Stockley* Verdict").

This claim arises from Plaintiffs' efforts, as legal observers and as private citizens to document, report on and record ongoing protests relating to the *Stockley* Verdict.  Defendants intentionally and willfully violated Plaintiffs' right to freedom of speech and right to be free from arrest without probable cause. Defendants specifically targeted Plaintiffs in an effort to halt and/or impede the documentation of police activity during the *Stockley* Verdict protests.

## PARTIES

1.      Plaintiff Scott A. Kampas is a Missouri resident who lives in the City of Saint Louis, Missouri.

2.      Plaintiff Steven S. Hoffmann is a Missouri resident who lives in Saint Louis County, Missouri.

3.      Plaintiffs have each attended many dozens of public protests since 2014.

4.      Plaintiffs attend protests both as private residents of Missouri, who are deeply interested in ensuring that police respect the Constitutional rights of protesters, and as trained volunteer legal observers.

5.      Plaintiffs Kampas and Hoffmann have received formal classroom and field training by both the American Civil Liberties Union and the National Lawyers Guild. These trainings were conducted by licensed attorneys and other trained volunteers, and are comparable to Continuing Legal Education courses taught in this state. [1]

6.      Plaintiffs are known in the community for publicizing the results of their observations and documentation of police activity to others by conducting interviews with the media, speaking about their experiences to public officials and to members of the public, and by placing their observations into the public record by making written declarations in judicial proceedings, by testifying about their observations in courts of law, and by giving depositions in civil proceedings, and by making official complaints to the Civilian Oversight Bureau.

7.      Plaintiffs were present in the City of St. Louis, Missouri on Tuesday, October 3, 2017, to document the public response to the *Stockley* Verdict, and the police response to those protests.

---

[1] A district court may take judicial notice of judicial opinions and public records. *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005). This Court should take judicial notice that Judges in the Eastern District of Missouri have previously acknowledged the value, professionalism, and law-abiding activities of legal observers. *See Ahmad v. City of St. Louis*, No. 4:17-CV-2455-CDP (E.D. Mo.); *Templeton*, *et al*. *v. Dotson et al*., No. 4:14-cv-2019-CEJ (E.D. Mo.); *Molina v. City of St. Louis*, No. 4:17-CV-2498-AGF (E.D. Mo.). Other federal courts have also recognized that legal observers are often subjected to arrest and retaliation for observing police activities. *See Index Newspapers LLC v. City of Portland*, 480 F.Supp.3d 1120, 1142, No. 3:20-cv-1035-SI (D. Oregon, August 20, 2020)("Before the TRO was in place, Plaintiffs submitted numerous declarations, photographs, and videos describing and depicting instances when journalists and Legal Observers were targeted."); *Breathe v. City of Detroit*, 484 F.Supp.3d 511, No. 20-12363 (E.D. Mich., September 4, 2020).

3

8.      On October 3, 2017, Plaintiffs were not participating as protestors, but rather as neutral third-party observers.

9.      Defendant the City of St. Louis, Missouri (hereinafter, "City of St. Louis") is a first-class city, and a political subdivision of the State of Missouri, duly organized under the Constitution of Missouri.

10.     The St. Louis Metropolitan Police Department ("SLMPD") is an instrumentality of the City of St. Louis, Missouri organized and controlled pursuant to the Statutes of the State of Missouri.

11.     Defendant Police Officer Kenneth Kegel is or was a police officer with the SLMPD. On information and belief, P.O. Kegel held the rank of "Major," and was further identified by Department Serial Number 1768.

12.     P.O. Kegel was acting in as Detail Commander on October 3, 2017, and was the highest ranking police officer present.

13.     Defendant Police Officer Eric Larson is or was a police officer with the SLMPD. On information and belief, P.O. Larson held the rank of "Captain" and was further identified by Department Serial Number 4596.

14.     P.O. Larson was the Detail Deputy Commander on October 3, 2017, and was the second-highest ranking police officer present.

15.     Defendant Police Officer Bryan LeBradford Lemons is or was a police officer with the SLMPD. On information and belief, P.O. Lemons was further identified by Department Serial Number 11154.

16.     Defendant John Doe #1 is an as of yet unidentified male police officer with the SLMPD.

4

17.     At all times relevant herein, Defendants acted under color of the laws, statutes, ordinances, and regulations of state law.

18.     At all times relevant herein, except as explicitly stated, Defendants acted under the management, regulations, policies, customs, practices and usages of the SLMPD and/or the City of St. Louis pursuant to their authority as law enforcement officers.

## JURISDICTION AND VENUE

13.     Plaintiffs bring this claim pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the First and Fourth Amendments, as incorporated against the States and their municipal divisions through the Fourteenth Amendment.

14.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 because Plaintiffs' action arises under the Constitution of the United States and § 1343(a)(3) to redress the deprivation of rights secured by the Constitution of the United States.

15.     Venue is proper in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because all of the events giving rise to the claims occurred in the City of St. Louis.

16.     Venue is proper in the Eastern Division because all of the events leading to the claims for relief arose in the City of St. Louis and Defendants actions were in the Eastern Division. E.D. Mo. L.R. 2.07(A)(1), (B)(1).

17.     Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## ALLEGATIONS COMMON TO ALL COUNTS

18.     In December 2011, then-St. Louis police officer Jason Stockley (who is white) shot and killed St. Louis resident Anthony Lamar Smith (who was African-American), whom Stockley and his partner had initially stopped on suspicion of involvement in a drug transaction.

19.      In May 2016, Officer Stockley was charged with first-degree murder for Smith's death.

20.      On Friday, September 15, 2017, after a four-day bench trial, a Missouri Circuit Judge acquitted Officer Stockley of first-degree murder.

21.      Following the announcement of the *Stockley* Verdict, public protests began at multiple locations in St. Louis and surrounding communities, some spontaneous and others more organized.

22.      SLMPD officers amassed at several protests wearing tactical dress, including helmets, and carrying batons, full-body riot shields, and chemical agents.

23.      On Tuesday evening, October 3, 2017, Plaintiff Kampas drove Plaintiff Hoffmann to north of where Jefferson Avenue crosses over Interstate 64 / U.S. Highway 40. Plaintiff Kampas parked, and Plaintiffs continued on foot on the sidewalks to the highway overpass.

24.      Plaintiffs stood next to reporter Rachel Lippmann of St. Louis Public Radio on the west sidewalk of Jefferson Avenue, observing a protest march which was proceeding east on the highway.

25.      Numerous police vehicles were also following the protest march on the highway.

26.      Plaintiffs were present on the sidewalk to observe and film the demonstrations and police response thereto, and to takes notes.

27.      Plaintiffs were not present as protestors nor were they participating in the protests – they were neutral third-party observers.

28.      Plaintiffs had note or legal pads and pens and cameras in their hands while they were on the sidewalk.

29.     Plaintiffs wore bright neon green hats emblazoned with the words in a large font "Nation Lawyers Guild Legal Observer," as was their usual custom.

30.     When the protest march reached the Jefferson Avenue exit from the highway, the group of protesters exited the highway and proceeded north on Jefferson Avenue.

31.     Plaintiffs observed multiple police officers filming the assembled crowd.

32.     Plaintiffs crossed Jefferson Avenue and walked on the sidewalk proceeding north on Jefferson Avenue, observing the group of protesters and the police as they moved north.

33.     While walking on the Jefferson Avenue sidewalk, Plaintiffs did not observe anyone committing any crimes, vandalizing property, or making any threat of force or violence to officers or property. Plaintiffs did not observe officers order the group of protesters to disperse, and the scene was calm.

34.     Before Plaintiffs reached Market Street, and without any instruction or warning, police officers surrounded the area on all sides, encircling protesters, legal observers, and members of the media, and prevented everyone from leaving, regardless of whether they were marching in the street or walking on the sidewalk.

35.     When a group of people are surrounded and encircled by police and not provided a means of egress, and the people who are trapped are prohibited from leaving, this is a law enforcement tactic referred to as "kettling."

36.     When this occurred, Plaintiff Hoffmann verbally told numerous officers around him that he was never present on the highway and that he was not protesting, and that he was acting as a legal observer, and he asked if he could exit the kettle area.

7

37.     Plaintiff Hoffmann specifically told several "white shirt" officers, who are senior officials of the SLMPD, that there was no probable cause to arrest the Plaintiffs, because they had not gone onto the highway at any time, and had been on the sidewalk observing.

38.     Plaintiff Hoffmann's peaceful and lawful requests to leave the kettle area were ignored.

39.     Suddenly, and without warning, two unknown police officers rushed towards Plaintiff Hoffmann, seized him by his arms and back, and threw him face-first onto the ground, and cuffed his hands behind his body, causing pain to his shoulders, arms, and chest.

40.     At no point was Plaintiff Hoffmann resisting arrest, failing to comply, or posing a threat to any person.

41.     Plaintiff Kampas noticed legal observers and individuals who were filming were the first individuals targeted for arrest.

42.     Everyone who was inside the "kettle" was arrested, including Plaintiffs.

43.     At no time did Defendants attempt to ascertain whether the persons that they arrested were actually present on the highway or part of the protest, or whether there was probable cause to believe that they could be arrested for a crime.

44.     Defendants had ample opportunity and ability to tell whether Plaintiffs had ever walked onto the highway, or committed a crime, because they noted in Incident Report CN 17-048640 that "surveillance was continually conducted on the protest group."

45.     It was clear, by the coordination of the actions of the officers in circling the group into a "kettle," and arresting everyone, regardless of whether there was probable cause for their arrest, that this tactic was planned and that senior officials of the SLMPD had notice of and sanctioned the conduct of the Defendants.

46.     Upon information and belief, senior officials of the SLMPD were directing such actions and conduct and/or tacitly accepting and encouraging such conduct by not preventing officers from engaging in such conduct and by not disciplining them when they did engage in such actions and conduct.

47.     Defendant John Doe #1 handcuffed Plaintiff Kampas, and Kampas was placed in a van and transported to jail.

48.     Defendant P.O. Bryan LeBradford Lemons and other police officers placed Hoffmann in a van, for transport to jail.

49.     Plaintiffs were held in the St. Louis City Justice Center for over 20 hours.

50.     Plaintiffs were put into locked rooms but were allowed to keep their property on their persons for several hours.

51.     From a cell at the Justice Center, Plaintiff Hoffmann gave a cellular telephone interview with a reporter from the St. Louis Post-Dispatch newspaper, expressing dismay that he had been arrested again without probable cause for his arrest.

52.     After many hours, Plaintiffs were offered sandwiches with slimy lunch meat that was visibly green with mold or other discoloration, and which smelled putrid. On information and belief, the City of Saint Louis has a practice of serving stale, expired, rotten, and moldy food at the Justice Center to persons who are incarcerated.

53.     Plaintiffs were not provided toilet paper or soap when using the bathroom.

54.     Plaintiffs were not allowed to make phone calls to their attorneys, despite demanding to make phone calls to their attorneys.

55.     Plaintiffs were told that they were being charged with "trespassing," and were released.

56.     No charges were ever brought against Plaintiffs.

## MUNICIPAL LAW ALLEGATIONS

57.     The City of St. Louis has a continuing, widespread, persistent custom of arresting groups of protesters and other bystanders without probable cause to believe that individuals who are being arrested have committed a crime.

58.     The City of St. Louis has a custom of retaliating against protestors and other bystanders expressing disapproval of the actions of law enforcement officers.

59.     The City of St. Louis has practiced their custom of arresting individuals without probable cause and retaliating against individuals expressing disapproval of the actions of law enforcement officers on occasions before these particular protests, including:

a.  On or around March 20, 2012, when dozens of SLMPD officers rushed a large group of protesters from behind after they complied with an order to leave a public park, and indiscriminately beat protesters with sticks and arrested at least 15 individuals who were peacefully crossing a street, while these individuals were committing no crime.

b.  On or around May 24, 2012, in downtown St. Louis, when police arrested at least 10 individuals who were part of a march against police brutality, without any evidence that the majority of those arrested had committed any crime.

c.  On May 24, 2012, Plaintiff Kampas was one of the individuals arrested without probable cause.

d.  On or around October 12, 2014, at a Quicktrip on South Vandeventer Avenue in the City of St. Louis, police arrested at least 20 individuals who had marched to

protest the police shooting and killing of Vonderrit Myers in the Shaw Neighborhood of St. Louis.

e.   On September 17, 2017, in downtown St. Louis, the SLMPD conducted an infamous mass-arrest of over 100 people, including journalists, legal observers, and innocent bystanders. Numerous individuals were arrested without probable cause.

60.   On October 12, 2014, Plaintiff Hoffmann was one of the individuals arrested without probable cause.

61.   On October 12, 2014, Hoffmann was arrested by Sargent Kimberly Allen (Also identified as No. 6178) in retaliation for attempting to make a complaint to SLMPD Internal Affairs about excessive force that he had witnessed there.

62.   On September 17, 2017, Plaintiff Kampas was one of the individuals arrested without probable cause.

63.   Following the September 17, 2017 arrests, Plaintiff Kampas reported to the Civilian Oversight Board that he saw Lieutenant Roger Engelhardt laughing at individuals who were being arrested without probable cause by lower-ranking SLMPD officers. At no time did Lieutenant Roger Englehardt attempt to intervene, or to ensure that officers behaved in a Constitutional manner.

64.   In fact, Engelhardt laughed while officers beat, assaulted, and falsely arrested protesters. And Engelhardt has been a high-ranking official within Internal Affairs, and in charge of the Force Investigative Unit.

65.   The City of St. Louis has failed to supervise and train its officers to make arrests in a constitutional way, to permit recording of police actions, and to avoid restricting freedom of

11

movement unjustifiably, and has been on notice that the lack of training and supervision have resulted in the deprivation of constitutional rights since at least 2014.

66.     The March 20, 2012 arrests without probable cause were actively encouraged by SLMPD Lieutenant Colonel Gerald Leyshock, who told the assembled officers "there are a lot of hard core anarchists in there, now go get 'em!" The arrests were witnessed by Eddie Roth, a Special Assistant to the Mayor, who later became Director of Public Safety, overseeing the SLMPD.

67.     On information and belief, Mr. Roth was in a state of visible shock at the behavior he witnessed by police that night, and yet he did nothing to intervene or stop the officers, or to ensure that they were trained in the future to avoid making similar unconstitutional arrests.

68.     When Plaintiff Hoffmann pressed Mr. Roth to intervene on the scene, Mr. Roth told Hoffmann "the courts are always open to you," and he did not intervene as a high-ranking policymaking official, suggesting by his statement that the public should rely on litigation and the courts to be free from unconstitutional arrests.

69.     At no time did Lieutenant Colonel Leyshock attempt to intervene as SLMPD officers made arrests without probable cause, showing deliberate indifference or tacit authorization of such conduct by a high-ranking policymaking official.

70.     The October 12, 2014 arrests were personally overseen by Lieutenant Colonel Paul Nocherio, Major John Hayden (who soon after became Chief of Police), Sergeant Brian Rossomano, and Chief of Police Sam Dotson.

71.     Plaintiff Hoffmann spoke to Major John Hayden by telephone before he was arrested by Internal Affairs without probable cause, informing him of the excessive force that he

had witnessed by police. Major John Hayden told Hoffmann to stay on the scene, so that Internal Affairs could take his statement.

72.     Internal Affairs arrested Hoffmann for attempting to make a statement.

73.     On information and belief, Major John Hayden directed or encouraged Internal Affairs to arrest Hoffmann for making a complaint, or tacitly authorized Hoffmann's arrest, while knowing that there was no probable cause to make it.

74.     Police officers falsified the narrative and details of Hoffmann's arrest in their incident report, to cover up their arrest without probable cause.

75.     At no time did Nocherio, Hayden, Rossomano, or Dotson—all high ranking SLMPD supervisors—attempt to intervene as SLMPD officers made arrests without probable cause, showing deliberate indifference or tacit authorization of such conduct by policymaking officials.

76.     While the individuals falsely arrested on October 12, 2014 were being held in the City's Justice Center, persons who identified themselves as member's of the Mayor's senior staff entered the Justice Center and addressed those who had been arrested as a group, apologizing for what had happened to them, and collecting written statements from them. These members of the Mayor's senior staff told those arrested that their statements would be used to "look into what happened to you." These high-ranking City officials then personally walked the entire group of people who had been arrested out of the front door of the Justice Center, releasing them.

77.     Hoffmann was never charged with a crime after his arrest.

78.     The arrests of September 17, 2017 were personally overseen by high ranking SLMPD supervisors Lieutenant Colonel Gerald Leyshock, Lieutenant Scott Boyher, Lieutenant Timothy Sachs, and Sergeant Brian Rossomanno, who at no time attempted to intervene as

SLMPD officers made arrests without probable cause, showing deliberate indifference or tacit authorization of such conduct by policymaking officials.

79.     The arrests of Plaintiff Kampas and Plaintiff Hoffmann on October 3, 2017, were personally overseen by high ranking SLMPD supervisors Defendant Major Kenneth Kegel, Defendant Captain Eric Larson, Lieutenants Paul Piatchek, Scott Aubuchon, Scott Boyher, Daniel Chitwood, and Christi Marks, who were all classified as "Commanders" of the incident. At no time did Kegel, Larson, Piatchek, Aubuchon, Boyher, Chitwood, or Marks attempt to intervene as SLMPD officers made arrests without probable cause, showing deliberate indifference or tacit authorization of such conduct by policymaking officials.

## COUNT I: VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH (42 U.S.C. §1983)

Count I is directed against all Defendants. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

80.     Plaintiffs were not protestors.

81.     Plaintiffs were legal observers and neutral third-party observers who were engaged in constitutionally protected activity when they attended a lawful assembly on public streets and sidewalks for the purpose of documenting a public protest.

82.     Defendants violated Plaintiffs' rights under the First Amendment to freedom of speech by interfering with Plaintiffs' ability to gather information and cover a matter of public interest and concern as legal observers documenting the protests of the *Stockley* Verdict.

83.     Observing and recording public protests, and the police response to those protests, is a legitimate means of gathering information for public dissemination that is protected by the freedom of speech and freedom of the press clauses of the First Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.

14

84. Defendants engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberated indifference to the Plaintiff's First Amendment rights.

85. As a direct and proximate result of Defendants' unlawful action, Plaintiffs were damaged.

WHEREFORE, Plaintiffs respectfully request this Court:

a. Enter judgment in favor of Plaintiffs and against the Defendants;

b. Award Plaintiffs monetary damages in an amount that is fair and reasonable to compensate them for the damages they have suffered;

c. Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

d. Allow such other and further relief as the Court deems just and proper.

## COUNT II: FIRST AMENDMENT RETALIATION (42 U.S.C. §1983)

Count II is directed against all Defendants. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this complaint as fully set forth herein.

86. Plaintiffs were legal observers acting as neutral third-party observers who were engaged in constitutionally protected activity when they were documenting the public protests relating to the *Stockley* Verdict and the police response thereto.

87. The City of St. Louis retaliated against Plaintiffs for engaging in constitutionally protected activities of freedom of speech and freedom of the press.

88. Plaintiffs now reasonably fear being unlawfully seized and arrested in an arbitrary and/or retaliatory manner if they observe a protest in the City of St. Louis.

89. Plaintiffs now reasonably fear that they will be subjected to interference with their right to record the police if they observe a protest in the City of St. Louis.

90.     These acts of the SLMPD described herein would chill a person of ordinary firmness from continuing to engage in a constitutionally protected activity, and they have, in fact, chilled Plaintiffs from continuing to peacefully observe and document these protests.

91.     Defendants' arrest of Plaintiffs was because they exercised their First Amendment rights.

92.     It was the custom or policy of the City of St. Louis, as well as the City's failure to train and supervise its officers and/or the City's explicit or implied direction to Defendants, that caused the First Amendment retaliation.

93.     As a result of the Defendants retaliation the Plaintiffs were damaged.

WHEREFORE, Plaintiffs respectfully request this Court:

a.   Enter judgment in favor of Plaintiffs and against Defendants;

b.      Award Plaintiffs monetary damages in an amount that is fair and reasonable to compensate them for the damages they have suffered;

c.      Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

d.      Allow such other and further relief as the Court deems just and proper.

## COUNT III: FOURTH AMENDMENT VIOLATION FOR UNLAWFUL SEIZURE (42 U.S.C. §1983)

Count III is directed against all Defendants. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

94.     Plaintiffs have a right under the Fourth Amendment to be free from unreasonable seizures, as applied to the states under the Fourteenth Amendment to the United States Constitution.

95.     Plaintiffs were seized by Defendants when they intentionally terminated their freedom of movement without justification, and zip-tied or handcuffed their hands behind their backs.

96.     The employment of "kettling" without warning was objectively unreasonable and constituted an unlawful seizure.

97.     Plaintiffs had committed no crime, and there was no objectively reasonable belief that Plaintiffs had committed a criminal offense, nor was there even arguable probable cause for their arrests.

98.     Plaintiffs put senior and high-ranking SLMPD commanders on notice directly that they had not committed any crime, and that no probable cause existed to arrest them.

99.     Plaintiffs posed no threat to the safety of any police officer or any other person.

100.    Plaintiffs had a Constitutional right to be free from the false allegations that they had committed a crime.

101.    Defendants engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Plaintiff's Fourth Amendment rights. As a direct and proximate result of Defendants' unlawful actions, Plaintiffs were damaged.

102.    It was the custom or policy of the City of St. Louis, as well as the City's failure to train and supervise its officers, that caused the unlawful seizures.

WHEREFORE, Plaintiffs respectfully request this Court:

a.  Enter judgment in favor of Plaintiffs and against the City of St. Louis;

b.  Award Plaintiffs monetary damages in an amount that is fair and reasonable to compensate them for the damages they have suffered;

17

c.   Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. §

1988 and any other applicable provisions of law; and

d.   Allow such other and further relief as the Court deems just and proper.

## COUNT IV: FAILURE TO INSTRUCT, TRAIN, SUPERVISE, CONTROL, AND/OR DISCIPLINE AGAINST THE CITY OF ST. LOUIS AND ST. LOUIS METROPOLITAN POLICE DEPARTMENT COGNIZABLE UNDER 42 U.S.C. § 1983

Count IV is directed against The City of St. Louis. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs of this Complaint as fully set forth herein.

109.   Defendants violated the constitutional rights of Scott Kampas and Steven Hoffmann as set forth herein.

110.   There exists within the Police Department and/or the City policies or customs, practices and usages that are so pervasive that they constitute the policies of this Defendant, that caused the constitutional deprivations of Scott Kampas and Steven Hoffmann as set forth herein. The policies, customs, practices, and usages that exist are:

A.   To arrest those in and around lawful assemblies without reasonable cause or provocation and in violation of their constitutional rights;

B.   To ignore the policies and procedures of SLMPD and/or the Police Department, by encouraging and/or permitting the false arrests of attendees at lawful assemblies;

C.   To fail to adequately train, supervise, and/or discipline police officers and/or City officials concerning the practices aforementioned, to assure compliance with City and/or Department policy, state and federal laws, and the Constitution of the United States.

18

111.    Alternatively and without waiver of the foregoing, the City's training program
was not adequate to train its officers and officials to properly handle reoccurring situations like
the one involving Scott Kampas and Steven Hoffmann, and therefore, the City had a policy or
custom of failing to adequately train employees/officials of the City and/or Department.

112.    The City and/or the SLMPD knew that more and/or different training was needed
to avoid the false arrests of those who are in and around lawful assemblies and other
constitutional deprivations of the Plaintiffs.

113.    The Department was on notice through its highest-ranking officials who had
personally witnessed and/or coordinated false and retaliatory arrests without probable cause that
officers needed further and additional training.

114.    The City is ultimately vested with the duty, power and authority to train,
supervise, discipline and otherwise control the officers of the Police Department. The City failed
in its duty to so train, supervise and discipline Defendants in general and specifically so as to
conform their conduct with constitutional requirements. Specifically, the City failed to
adequately train, supervise and discipline officers of the Police Department/agents of the City in
the proper and lawful arrests of subjects; failed to train, supervise and discipline officers with
regard to the duty to intervene and/or report transgressions, and to truthfully respond to inquiries.
The City effectively abrogated the power to train, supervise, discipline and control officers of the
Police Department/agents of the City, resulting in the constitutional deprivations to Scott
Kampas and Steven Hoffmann as set forth above.

115.    The acts of the Defendants as set forth herein were taken under color of state law.

116.    As a direct and proximate result of the actions of these Defendant as set forth
herein, Scott Kampas and Steven Hoffmann have been damaged as a result of sustaining physical

injury, pain and suffering, emotional damages, pain of the mind, including but not limited to

mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and

loss of reputation.

WHEREFORE, Plaintiffs Scott Kampas and Steven Hoffmann pray for judgment against

the Defendants seeking money damages against them for compensatory damages in an amount

that is fair and reasonable; for the costs of this action, to include but not necessarily be limited to

reasonable attorney's fees; and for such other and further relief as the Court deems fair and

appropriate under the circumstances.

Dated October 3, 2022.

> Respectfully submitted,
>
> By:      /s/ **STEVEN SETH HOFFMANN**
> Steven Seth Hoffmann, 74445MO
> steven@newtonbarth.com
> 555 Washington Ave., Ste. 420
> St. Louis, Missouri 63101
> (314) 629-3581 – Telephone
>
> Attorney for Plaintiffs

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed via the Court's electronic filing system, with personal service to follow upon all parties of record on this 3rd day of October, 2022.

 /s/ ***Steven Seth Hoffmann***